UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADAPTIX, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ALCATEL-LUCENT USA, INC., and CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS<br><br>Defendants | Case No. 6:15-cv-00604<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT ALCATEL-LUCENT USA, INC.'S FIRST AMENDED ANSWER**

As and for its Answer and Defenses in response to Plaintiff ADAPTIX, Inc.'s ("ADAPTIX") Complaint, Defendant Alcatel-Lucent USA, Inc. ("ALU"), by and through its attorneys, responds to the Complaint as follows:

This is an action for patent infringement in which Plaintiff, ADAPTIX, Inc. ("ADAPTIX"), complains against Defendants, Alcatel-Lucent USA, Inc. ("ALU"), and Cellco Partnership d/b/a Verizon Wireless ("Verizon"), (collectively, "Defendants") as follows:

**ANSWER:** ALU admits that the pleading purports to be a Complaint for patent infringement and names ALU as a defendant. ALU denies that the Complaint properly states a claim or claims for patent infringement, and specifically denies any wrongdoing or infringement.

**THE PARTIES**

1. ADAPTIX is a Delaware corporation with its principal place of business at 2400 Dallas Parkway, Suite 200, Plano, TX 75093.

**ANSWER:** ALU is without information sufficient to form a belief of the truth or falsity of the allegations of paragraph 1, and therefore denies the same.

2. ALU is a Delaware corporation with its principal place of business at 600-700 Mountain Avenue, Murray Hill, New Jersey 07974, and regularly does business in this judicial

district at 601 Data Drive, Plano, Texas 75075 by, among other things, committing the infringing acts giving rise to this Complaint.

**ANSWER:** ALU admits that it is organized under the laws of Delaware. ALU admits that it has a place of business at 600-700 Mountain Avenue, Murray Hill, New Jersey 07974 and does business in this judicial district at 601 Data Drive, Plano, Texas 75075. ALU does not dispute, solely for the purposes of this action, that personal jurisdiction is proper. ALU denies the remainder of paragraph 2.

3. Verizon is a Delaware corporation with its principal place of business at 1 Verizon Way, Basking Ridge, New Jersey 07920, and regularly does business in this judicial district at 741 N. Central Expressway, Plano, Texas 75075 by, among other things, committing the infringing acts giving rise to this Complaint.

**ANSWER:** ALU is without information sufficient to form a belief of the truth or falsity of the allegations in paragraph 3, and therefore denies the same.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, Title 35 of the United States Code, 35 U.S.C. §§ 101, *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** ALU admits that this pleading appears to be an action for patent infringement under the Patent Laws of the United States, Title 35 of the United States Code. ALU denies that the Complaint properly states such claims, and specifically denies any wrongdoing or infringement. ALU admits that the Complaint purports to base subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). The remainder of this paragraph contains legal conclusions to which no answer is required.

5. Defendants are subject to this Court's specific and general personal jurisdiction, pursuant to due process and/or the Texas Long Arm Statute.

**ANSWER:** ALU admits that the Complaint purports to base personal jurisdiction on due process and the Texas Long Arm Statute. ALU does not dispute, solely for the purposes of this action, that personal jurisdiction is proper. ALU denies the remainder of paragraph 5.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b-c) and 1400(b) because Defendants, *inter alia*, regularly conduct business in and have committed the acts giving rise to this action within this judicial district.

**ANSWER:** ALU admits that the Complaint purports to assert venue pursuant to 28 U.S.C. §§ 1391(b, c) and 1400(b). ALU admits that is has a facility within the State of Texas. ALU does not dispute, solely for the purposes of this action, that venue is proper. ALU denies any wrongdoing or infringement directly or through intermediaries or agents in the State of Texas or anywhere else. ALU denies that it makes, offers for sale, sells, uses, or imports products or services that infringe U.S. Patent No. 8,934,445. ALU denies that it uses or induces others to use services or products that infringe the patent-in-suit. ALU is without information sufficient to form a belief of the truth or falsity of the allegations directed to other Defendant in paragraph 9, and therefore denies the same. The remainder of this paragraph constitutes legal conclusions that require no answer.

**COUNT I**
**(INFRINGEMENT OF U.S. PATENT NO. 8,934,445)**

7. ADAPTIX incorporates by reference paragraphs 1 through 6 herein.

**ANSWER:** ALU repeats and realleges its responses to Paragraphs 1-6 of the Complaint as if those responses have been fully set forth herein.

8. This cause of action arises under the patent laws of United States of America and 35 U.S.C. §§ 271, *et seq*.

**ANSWER:** ALU admits that this pleading appears to be an action for patent infringement under the Patent Laws of the United States, Title 35 of the United States Code.

ALU denies that the Complaint properly states such claims, and specifically denies any wrongdoing or infringement.

9. ADAPTIX is the owner by assignment of United States Patent No. 8,934,445, entitled "Multi-Carrier Communications with Adaptive Cluster Configuration and Switching" ("the '445 Patent"), with ownership of all substantial rights therein, including the right to exclude others and to sue and recover damages for the past and future infringement thereof. A true and correct copy of the '445 Patent was attached as Exhibit A to the Original Complaint.

**ANSWER:** ALU admits that a document purporting to be United States Patent No. 8,934,445 is attached as Exhibit A to the Original Complaint. ALU is without information sufficient to form a belief regarding the truth or falsity of the remainder of paragraph 9, and therefore denies the same.

10. The '445 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

**ANSWER:** Denied.

11. ALU has directly infringed and continues to directly infringe at least Claims 1 and 8 of the '445 Patent by, among other things, making, using, offering for sale, selling and/or importing LTE cellular base stations, including without limitation the 9412 eNodeB Compact, the 9460 Pico, the 9926 Distributed Base Station, the 9442 Remote Radio Head, the lightRadio 9711 Indoor Base Station for LTE, the lightRadio 9712 Outdoor Base Station for LTE, and 9760 Small Cells, including the 9764 Metro Cell Outdoor LTE and the 9768 Metro Radio Outdoor, for use on the 4G LTE Wireless Networks controlled by AT&T, Verizon, and Sprint. ALU is thereby liable for infringement of the '445 Patent pursuant to 35 U.S.C. § 271(a).

**ANSWER:** Denied.

12. Verizon has directly infringed and continues to directly infringe at least Claims 1 and 8 of the '445 Patent by, among other things, using the accused LTE cellular base stations, including without limitation the 9412 eNodeB Compact, the 9460 Pico, the 9926 Distributed Base Station, the 9442 Remote Radio Head, the lightRadio 9711 Indoor Base Station for LTE, the lightRadio 9712 Outdoor Base Station for LTE, and 9760 Small Cells, including the 9764 Metro Cell Outdoor LTE and the 9768 Metro Radio Outdoor, to operate its 4G LTE Wireless Network. Verizon is thereby liable for infringement of the '445 Patent pursuant to 35 U.S.C. § 271(a).

**ANSWER:** Denied.

13. ALU has indirectly infringed and continues to indirectly infringe at least Claims 1 and 8 of the '445 Patent in this judicial district and elsewhere in the United States by, among other things, actively inducing the using, offering for sale, selling, or importation of LTE cellular base stations, including without limitation the 9412 eNodeB Compact, the 9460 Pico, the 9926 Distributed Base Station, the 9442 Remote Radio Head, the lightRadio 9711 Indoor Base Station for LTE, the lightRadio 9712 Outdoor Base Station for LTE, and 9760 Small Cells, including the 9764 Metro Cell Outdoor LTE and the 9768 Metro Radio Outdoor, to AT&T, Verizon, and Sprint, for use on their respective 4G LTE Wireless Networks. ALU's end users, including without limitation AT&T, Verizon, and Sprint, who purchase systems and components thereof, and operate such systems and components in accordance with ALU's instructions directly infringe one or more claims of the '445 Patent in violation of 35 U.S.C § 271. To the extent such end users are held to have directly infringed, ALU is thereby liable for infringement of the '445 Patent pursuant to 35 U.S.C. § 271(b).

**ANSWER:** Denied.

14. ALU has indirectly infringed and continues to indirectly infringe at least Claims 1 and 8 of the '445 Patent by, among other things, contributing to the direct infringement of others, including without limitation AT&T, Verizon, Sprint, and other end users of its LTE cellular base stations, including without limitation the 9412 eNodeB Compact, the 9460 Pico, the 9926 Distributed Base Station, the 9442 Remote Radio Head, the lightRadio 9711 Indoor Base Station for LTE, the lightRadio 9712 Outdoor Base Station for LTE, and 9760 Small Cells, including the 9764 Metro Cell Outdoor LTE and the 9768 Metro Radio Outdoor by making, offering to sell, or selling, in the United States, or importing a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '445 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:** Denied.

15. ALU will have been on notice of the '445 Patent since, at the latest, the service of the Original Complaint in Case No. 6:15-cv-00041. By the time of trial, ALU will thus have known and intended (since receiving such notice), that its actions would actively induce and contribute to actual infringement of at least Claims 1 and 8 of the '445 Patent.

**ANSWER:** ALU admits that it has been on notice of the '445 patent since the service of Adaptix's Original Complaint in Case No. 6:15-cv-00041. The remaining allegations in paragraph 15 are denied.

16. Verizon has indirectly infringed and continues to indirectly infringe at least Claim 8 of the '445 Patent by, among other things, actively inducing the using, offering for sale,

selling, or importation of the accused LTE cellular base stations, including without limitation the 9412 eNodeB Compact, the 9460 Pico, the 9926 Distributed Base Station, the 9442 Remote Radio Head, the lightRadio 9711 Indoor Base Station for LTE, the lightRadio 9712 Outdoor Base Station for LTE, and 9760 Small Cells, including the 9764 Metro Cell Outdoor LTE and the 9768 Metro Radio Outdoor, by the end users of its 4G LTE Wireless Network. Verizon's end users directly infringe at least Claim 8 of the '445 Patent by using the claimed apparatus through putting the invention into service, i.e., controlling the system as a whole and obtaining the benefit from it.

**ANSWER:** ALU is without information sufficient to form a belief of the truth or falsity of the allegations in paragraph 16, and therefore denies the same.

17. ALU will have been on notice of the '445 Patent since, at the latest, the service of the Original Complaint in Case No. 6:15-cv-00041. By the time of trial, ALU will thus have known and intended (since receiving such notice), that its actions would actively induce and contribute to actual infringement of at least Claims 1 and 8 of the '445 Patent.

**ANSWER:** ALU is without information sufficient to form a belief of the truth or falsity of the allegations in paragraph 17, and therefore denies the same.

18. ADAPTIX has been reparably and irreparably damaged as a result of Defendants' infringing conduct described in this Count. Defendants are thus liable to ADAPTIX for an amount that adequately compensates ADAPTIX for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284. Additionally, such irreparable damage will continue until Defendants are enjoined pursuant to 35 U.S.C. § 283.

**ANSWER:** Denied.

**PRAYER FOR RELIEF**

Wherefore, ADAPTIX respectfully requests that this Court enter:

A. Judgment in favor of ADAPTIX that ALU, AT&T, Verizon, and Sprint have directly infringed the '445 Patent, as aforesaid;

B. Judgment in favor of ADAPTIX that ALU, AT&T, Verizon, and Sprint have indirectly infringed the '445 patent, as aforesaid;

C. A permanent injunction enjoining Defendants, their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or privity therewith from direct and/or indirect infringement of the '445 Patent pursuant to 35 U.S.C. § 283;

D. An order requiring Defendants to pay ADAPTIX its damages with pre- and post-judgment interest thereon pursuant to 35 U.S.C. § 284;

E. A determination that this case is exceptional pursuant to 35 U.S.C. § 285;

F. An order awarding ADAPTIX its attorneys' fees and costs incurred herein pursuant to 35 U.S.C. § 287; and

G. Any and all further relief to which the Court may deem ADAPTIX entitled.

**ANSWER:** ALU denies each and every allegation directed at ALU contained in the Prayer for Relief. ALU denies any wrongdoing or infringement and denies that any conduct on its part entitles Adaptix to an injunction, damages under 35 U.S.C. § 284, or any other relief.

## DEMAND FOR JURY TRIAL

Adaptix hereby requests a trial by jury on all issues so triable by right pursuant to Fed. R. Civ. P. 38.

**ANSWER:** Adaptix's request for a jury trial requires no answer.

**AFFIRMATIVE AND OTHER DEFENSES**

1. Without altering the burdens of proof, ALU asserts the following affirmative and other defenses. ALU reserves the right to amend its Answer with additional defenses as further information is obtained.

**FIRST DEFENSE: NON-INFRINGEMENT**

2. ALU alleges that it does not infringe and has not infringed, directly, indirectly or jointly, literally or by the doctrine of equivalents, any valid and enforceable claim of the '445 patent.

**SECOND DEFENSE: INVALIDITY**

3. The claims of '445 patent are invalid, unenforceable and/or void for failure to satisfy one or more of the requirements for patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 41, 101, 102, 103, 112, 116, and/or 282.

**THIRD DEFENSE: LIMITATIONS ON DAMAGES AND RECOVERY**

4. Pursuant to the requirements of 35 U.S.C. §§ 286-287, the Plaintiff's ability to recover damages and/or costs is limited.

5. As a matter of law, plaintiff is not entitled to any purported damages suffered more than six (6) years prior to the filing of the Complaint.

6. On information and belief, plaintiff failed to mark its products or services incorporating the purported invention(s) of the patent-in-suit with the number of the applicable patent as required by 35 U.S.C. § 287. Plaintiff also failed to require its licensees to mark products and services offered under a license of the patent-in-suit.

7. Plaintiff failed to provide actual notice of the patent-in-suit to ALU prior to the filing of this Complaint.

8. ALU did not have actual notice of the patent-in-suit under 35 U.S.C. § 287 prior to the filing of this Complaint.

9. Plaintiff is not entitled to damages constituting a reasonable royalty prior to the filing of the Complaint because Plaintiff failed to mark its products and services and/or provide ALU actual notice of the patent-in-suit as required by 35 U.S.C. § 287.

**FOURTH DEFENSE: PROSECUTION HISTORY ESTOPPEL**

10. Plaintiff's claims of patent infringement are barred in whole or in part by the doctrine of prosecution history estoppel.

**FIFTH DEFENSE: ISSUE PRECLUSION**

11. Adaptix's purported claims are barred, in whole or in part, by issue preclusion.

**SIXTH DEFENSE: PROSECUTION LACHES**

12. Adaptix's purported claims are barred, in whole or in part, by the doctrine of prosecution laches.

**SEVENTH DEFENSE: WAIVER**

13. Adaptix's purported claims are barred, in whole or in part, by waiver.

**EIGHTH DEFENSE: ESTOPPEL**

14. Adaptix's purported claims are barred, in whole or in part, by the doctrines of estoppel and/or equitable estoppel.

**NINTH DEFENSE: INJUNCTION RELIED UNAVAILABLE**

15. Adaptix is not entitled to injunctive relief because any alleged injury to Adaptix is neither immediate nor irreparable, and Adaptix has an adequate remedy at law.

**TENTH DEFENSE: UNCLEAN HANDS REGARDING PROJECT ANGEL**

16. In the mid to late 1990s, AT&T Wireless Services, Inc. ("AWS") developed a wireless system incorporating orthogonal frequency-division multiple access ("OFDMA")

technology, code named "Project Angel." Project Angel used both a base station and a remote unit for transmitting data through wireless systems based on OFDMA technology.

17. During AWS's development of Project Angel, AWS created a number of confidential documents, data, and source code related to the project. AWS marked the documents, data, and source code as "proprietary" and "confidential" to ensure their protection and prevent their disclosure. For example, AWS employees working on Project Angel were required to sign a non-disclosure agreement ("NDA") which precluded employees from disclosing AWS's confidential information. AWS took additional precautions to protect Project Angel during its development, such as covering windows in buildings with metalized film to prevent non-authorized personnel from electronically eavesdropping on AWS personnel associated with Project Angel. AWS also sought and obtained a number of patents related to Project Angel, resource allocation, and OFDMA technology.

18. In 1996, Liang Hong started working at AWS and on Project Angel. Mr. Hong signed an NDA prior to working on Project Angel. From at least 1998-2000, Mr. Hong's position was manager of system engineering at AWS. On information and belief, Mr. Hong had access to and was provided confidential information and documents related to Project Angel, and other AWS technologies, while employed at AWS. On June 20, 2000, Mr. Hong and other inventors filed a patent application on technology related to Project Angel on behalf of AWS, which was later granted as U.S. Patent Nos. 6,801,775 and 6,801,513 and assigned to AWS.

19. Broadstorm Inc. ("Broadstorm") began recruiting Mr. Hong in October 2000 due to Mr. Hong's employment with AWS and work on Project Angel. On or about October 29, 2000, Mr. Hong entered a consulting agreement with Broadstorm to assist Broadstorm in wireless access network design and interface development, including the development of

software and algorithms for resource allocation. Mr. Hong became an employee of Broadstorm on or about February 21, 2001. While employed with Broadstorm, Mr. Hong's position was senior vice president of engineering. Some of Mr. Hong's consulting and employment with Broadstorm occurred while he was still employed with AWS.

20. James Hite started working at AWS and on Project Angel in 1995. Mr. Hite signed an NDA prior to working on Project Angel. On information and belief, Mr. Hite had access to and was provided confidential information and documents related to Project Angel while employed with AWS.

21. Broadstorm began recruiting Mr. Hite in September 2000 due to Mr. Hite's employment with AWS and work on Project Angel. Mr. Hite started working at Broadstorm in October 2000 to assist Broadstorm in developing prototype wireless hardware.

22. In 1998, Palaniappan Meiyappan started working at AWS and on Project Angel. Mr. Meiyappan signed an NDA prior to working on Project Angel. On information and belief, Mr. Meiyappan had access to and was provided confidential information and documents related to Project Angel while employed with AWS.

23. Broadstorm began recruiting Mr. Meiyappan in September 2000 due to Mr. Meiyappan's employment with AWS and work on Project Angel. Mr. Meiyappan started working at Broadstorm on or about October 9, 2000 to assist Broadstorm in developing prototype wireless hardware. Some of Mr. Meiyappan's employment with Broadstorm occurred while he was still employed with AWS.

24. On information and belief, with the hiring of Mr. Hong, Mr. Hite, and Mr. Meiyappan, Broadstorm believed it knew all of the engineering details of AWS's Project Angel and wireless OFDMA technology.

25. Broadstorm had not executed an NDA, or any other similar confidentiality agreement, with AWS that would allow Broadstorm access to AWS's confidential information or documents. On information and belief, one or more of Mr. Hong, Mr. Hite, and Mr. Meiyappan provided Broadstorm with confidential information and documents related to AWS's Project Angel and wireless OFDMA technology. Mr. Hong also provided portions of AWS's confidential and proprietary source code to Broadstorm on or about March 22, 2001. On information and belief, Broadstorm improperly obtained and used AWS's confidential information and documents related to Project Angel in developing Broadstorm's wireless products.

26. During related litigation, Adaptix produced over 50 of AWS's confidential and proprietary documents related to Project Angel that, on information and belief, were improperly obtained, possessed, and used by Broadstorm to develop its wireless products. Adaptix, however, has failed to preserve and produce metadata associated AWS's confidential and proprietary documents relating to Broadstorm's conduct in obtaining and possessing these documents.

27. Adaptix is the successor-in-interest to Broadstorm, a predecessor company to Adaptix.

28. Adaptix is barred by the doctrine of unclean hands from enforcing the '445 Patent against ALU.

**ELEVENTH AFFIRMATIVE DEFENSE: UNCLEAN HANDS REGARDING THE UNIVERSITY OF WASHINGTON**

30. Dr. Liu—named inventor of the '808 and '283 Patents and co-founder of Broadstorm—was a Professor at the University of Washington from 1998 to 2013.

31. As a condition of his employment, Dr. Liu signed an agreement, effective September 16, 1998, providing that:

> During my employment at the University of Washington, I may discover or invent items which may be copyrighted, trademarked, or patented. I understand and acknowledge that the University of Washington, in accord its the Patent, Invention, and Copyright Policy, has a valid interest in all such matters.
>
> As a condition of my employment with the University of Washington, *I hereby agree to disclose to the University all discoveries and inventions made while I am employed by the University*, and assign to the University all discoveries and inventions in which the University has an interest. I understand and agree that the University shall own and hold any such patents, trademarks, or copyrights emanating from those discoveries and inventions. I further agree not to transfer any rights or disclose any information concerning any such matters to any person other than as permitted by the rules of the University. I understand that the University of Washington will administer its terms and that I am not waiving any rights to a percentage of royalty payments as stated in that Policy.

(emphasis added).

32. The University of Washington's Patent, Invention, and Copyright Policy, in effect as of May 2000, provided that "University employees shall report *all* inventions and discoveries to the University's Office of Technology Transfer within the Office of Research" and that "*all* inventions and discoveries must be disclosed to the Office of Technology Transfer." (emphasis added).

33. Dr. Liu was an employee of the University of Washington when he allegedly conceived of the inventions claimed in the '808 Patent and the '283 Patent. Dr. Liu was therefore required to disclose the claimed inventions to the University of Washington's Office of Technology Transfer.

34. Dr. Liu never disclosed the inventions claimed in the '808 Patent and the '283 Patent to the University of Washington's Office of Technology Transfer within the Office of Research.

35. Dr. Liu also did not disclose the inventions claimed in the '808 Patent and the '283 Patent to the University of Washington (to the Office of Technology Transfer or otherwise) prior to the issuance of the patents.

36. Any alleged "disclosures" of the inventions claimed in the '808 Patent and the '283 Patent to the University of Washington fail to satisfy the disclosure requirements of the Patent, Invention, and Copyright Policy as a matter of law, to the extent that such disclosures were made to University personnel outside the Office of Technology Transfer, made after the issuance of the patents, or were otherwise incomplete.

37. Dr. Liu's non-disclosure of the claimed inventions in the '808 Patent and the '283 Patent to the University of Washington Office of Technology Transfer in violation of his employment agreement and the University's Patent, Invention, and Copyright Policy deprived the University of an opportunity to assert its ownership rights in the '808 Patent and the '283 Patent.

38. Dr. Liu's appropriation of ownership of the '808 Patent and the '283 Patent to Broadstorm absent the requisite disclosures to the University of Washington was unconscionable.

39. Plaintiff is the successor-in-interest to Broadstorm, a predecessor company to Plaintiff.

40. Plaintiff is barred by the doctrine of unclean hands from enforcing the '283 Patent and the '808 Patent against ALU.

## COUNTERCLAIMS

49. The following counterclaims for declaratory relief arise under the Declaratory Judgment Act and the Patent Laws of the United States, more particularly Title 28 U.S.C. §§ 2201, 2202 and Title 35 U.S.C. §§ 41 et seq., respectively. This Court has jurisdiction over the

subject matter of these counterclaims under, without limitation, Title 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

50. To the extent that this action remains in this district, venue is appropriate because Plaintiff has consented to the propriety of venue in this Court by filing the present action for patent infringement in this Court, in response to which these counterclaims are asserted.

**COUNT 1: NON-INFRINGEMENT OF U.S. PATENT NO. 8,934,445**

51. An actual and justiciable controversy exists between ALU and Plaintiff as to ALU's non-infringement of the '445 patent, as evidenced by Plaintiff's Complaint and ALU's Answer to Plaintiff's Complaint.

52. ALU does not infringe any claim of the '445 patent and believes that Plaintiff's Complaint has been filed without good cause.

53. ALU requests that this Court enter a judgment that ALU does not infringe, and has not infringed, any claim of the '445 patent.

**COUNT 2: INVALIDITY OF U.S. PATENT NO. 8,934,445**

54. An actual and justiciable controversy exists between ALU and Plaintiff as to the validity of the '445 patent, as evidenced by Plaintiff's Complaint and ALU's Answer to Plaintiff's Complaint.

55. The claims of the '445 patent are invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 282.

56. For example, and without limitation, the claims of the '445 patent are anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 in light of U.S. Patent Nos. 6,018,528; 6,259,686; 5,933,421; 6,726,297 and/or 6,359,923.

57. ALU is entitled to judgment from this Court finding that the ‘445 patent is invalid pursuant to Title 35 of the United States Code, including without limitation pursuant to 35 U.S.C. §§ 101, 102, 103, 112, and/or 282.

**PRAYER FOR RELIEF**

WHEREFORE, ALU requests that this Court enter a judgment in its favor and against Adaptix as follows:

A. Entry of judgment in favor of ALU, and against Adaptix, thereby dismissing Adaptix’s Complaint in its entirety, with prejudice, with Adaptix taking nothing by way of its claims;

B. A finding that each claim of the ‘445 Patent is not infringed by any actions of ALU;

C. A finding that each of the claims of the ‘445 Patent is invalid and/or unenforceable;

D. Denial of Adaptix’s request for injunctive relief;

E. An injunction against Adaptix, its assigns, licensees, and all those in privity therewith from asserting the ‘445 Patent against ALU;

F. A declaration that Adaptix is barred from enforcing the ‘445 Patent against ALU;

G. A declaration that this is an exceptional case under 35 U.S.C. § 285 and an award to ALU of its costs, attorney fees and expenses; and

H. Granting ALU such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

ALU hereby requests a trial by jury on all issues so triable by right pursuant to Fed. R. Civ. P. 38.

DATED: July 20, 2015

By: __/s/ David A. Nelson________
Michael E. Jones
POTTER MINTON PC
110 North College, Suite 500
PO Box 359
Tyler, Texas 75710-0359
Telephone: (903) 597-8311
Fax: (903) 593-0846

David A. Nelson
davenelson@quinnemanuel.com
Brianne M. Straka
briannestrake@quinnemanuel.com
Marc L. Kaplan
marckaplan@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN
500 West Madison
Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Fax: (312) 705-7499

ATTORNEYS FOR Alcatel-Lucent USA, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with the Local Rule CV-5 on July 20, 2015. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ David A. Nelson*

David A. Nelson